# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JODI C. HOHMAN, JHOHMAN, LLC,
TERRY MILLER, AND YOU GOT           Case No.
BUSTED BY ME, LLC, ON BEHALF
OF THEMSELVES, and THE CLASS        Hon.
THEY SEEK TO REPRESENT,

       Plaintiffs,

-vs-

UNITED STATES OF AMERICA,
DEPARTMENT OF TREASURY,
INTERNAL REVENUE SERVICE, C.
MEI CHUNG, MAURICE EADIE, and
JOHN AND/OR JANE DOE
EMPLOYEES, jointly and severally,

       Defendants.

_____/

# CLASS ACTION COMPLAINT

Plaintiffs, Jodi C. Hohman ("Ms. Hohman"), Jhohman, LLC ("Jhohman")(Ms. Hohman, with Jhohman, collectively, the "Hohman Plaintiffs"), Terry Miller ("Mr. Miller"), and You Got Busted By Me, LLC ("YGBBM") (Mr. Miller, with YGBBM, the "Miller Plaintiffs") (the Hohman Plaintiffs, with the Miller Plaintiffs, collectively, "Plaintiffs"), through their attorneys, and on behalf of themselves, and the class they seek to represent, as and for their class action

complaint against the Department of Treasury, Internal Revenue Service, the United States of America (the "United States"), C. Mei Chung ("Ms. Chung") and Maurice Eadie ("Mr. Eadie"), as the specifically named Defendant employees of the United States, and current and former Defendant employees of the United States not yet specifically known to Plaintiffs, identified for now as the "John and/or Jane Doe Employees" (Ms. Chung, with Mr. Eadie, and the John and/or Jane Doe Employees, collectively, the "Individual Defendants")(the United States, with the Individual Defendants, collectively, "Defendants"), state as follows:

## I.   PARTIES

1.     Plaintiff, Ms. Hohman, is an individual residing in the Township of Grand Blanc, Genesee County, Michigan.

2.     Plaintiff, Jhohman, is a Michigan limited liability company located in the City of Burton, Genesee County, Michigan.  At all relevant times, Ms. Hohman has been the sole member and owner of Jhohman.  Jhohman is a full-service security business.

3.     Plaintiff, Mr. Miller, is an individual residing in the City of Dearborn, Wayne County, Michigan, and at certain relevant times, conducted business as YGBBM.  At relevant times, Mr. Miller has been the sole member and owner of YGBBM.

4.     Plaintiff, YGBBM, is or was, at certain relevant times, a Michigan

2

limited liability company located in the City of Taylor, Wayne County, Michigan. At relevant times, Mr. Miller and/or YGBBM provided outside training services to Jhohman and certain of Jhohman's industry competitors.

5.     As more fully alleged below, Plaintiffs bring this action on their own behalves, and as representatives of a larger class of aggrieved parties.

6.     Defendants in this matter are:

a.     The United States, acting through its agency(ies), including the Department of Treasury, Internal Revenue Service (sometimes referred to for narrative purposes as the "IRS"), and its/their various current and former employees and agents, including Ms. Chung, Mr. Eadie, and certain John and/or Jane Doe Employees.

b.     Ms. Chung is an individual who, during all times relevant to this Complaint, served as a Revenue Agent for the IRS at an IRS office in the City of Detroit, Wayne County, Michigan.

c.     Mr. Eadie is an individual who, during all times relevant to this Complaint, served as a Group Manager for the IRS at an IRS office in the City of Detroit, Wayne County, Michigan.

d.     John and/or Jane Doe Employees are yet to be identified current and former employees of the United States, including yet to be identified current and former employees of the IRS.

3

## II. JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to 12 U.S.C.§ 3401, *et seq*. (generally referred to as the "Right to Financial Privacy Act"), 5 U.S.C. § 552a (generally referred to as the "Privacy Act"), 26 U.S.C. § 7431 (concerning an action for damages for an improper inspection of Return Information), 28 U.S.C. § 331 (referring to this Court's "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"), and 28 U.S.C. § 2201 (generally referred to as the "Declaratory Judgment Act"). Further, as set forth below, Plaintiffs' claims against the Individual Defendants for, *inter alia*, damages, arise under the Fourth and Fifth Amendments of the United States Constitution and other laws of the United States, and constitute a civil action cognizable in federal courts under what is commonly referred to as a "*Bivens*" action.

8. Venue is proper in this judicial district pursuant to 12 U.S.C. § 3416, which provides that an action under the Right to Financial Privacy Act "may be brought in any appropriate United States District Court." Venue is also appropriate because this is the judicial district in which (a) Plaintiffs reside, and (b) records in question in this matter are or were previously situated. Additionally, venue is proper in this judicial district because (a) "a substantial part of [certain] events or omissions giving rise to the [claim(s)] occurred" at or through the offices of the IRS in Detroit, Michigan, and (b) some or all of the Individual Defendants are

204328927.5 52101/191271

located in the vicinity of Detroit, Michigan.

## III.   GENERAL STATEMENT OF FACTS GIVING RISE TO THE INSTANT CASE

9.    This case arises from Defendants' surreptitious and otherwise improper issuance and handling of certain "John Doe Summonses" for Plaintiffs' financial and related records from various financial institutions, and/or Defendants' improper review, use, and handling of Plaintiffs' financial and related records.

10.    As more fully alleged and described below, "John Doe Summonses" provide the United States and/or certain of its agencies with limited means to secretly obtain (financial) records from private citizens, without notice or due process; provided Defendants, among other things, obtain prior court approval.

11.    As more fully alleged below, on multiple occasions, including at least two occasions known to the Hohman Plaintiffs and the Miller Plaintiffs, Defendants improperly used "John Does Summonses" to obtain their financial records from "Chase Bank" without prior court approval.

12.    As more fully alleged below, on multiple occasions, including at least one occasion known to the Hohman Plaintiffs and the Miller Plaintiffs, Defendants improperly used, reviewed, and otherwise handled Plaintiffs' financial and related records obtained through improperly issued "John Doe Summonses".

13.    As more fully alleged below, on multiple occasions, including several

5

occasions known to the Hohman Plaintiffs and the Miller Plaintiffs, Defendants, specifically including Ms. Chung and/or Mr. Eadie, attempted to conceal their improper issuance and use of "John Doe Summonses" to improperly obtain Plaintiffs' financial and related records

14.     As more fully alleged below, on multiple occasions, including several occasions known to the Hohman Plaintiffs and the Miller Plaintiffs, Defendants, specifically including Ms. Chung and Mr. Eadie, misrepresented to the Hohman Plaintiffs their use of, and intentions regarding improperly issued "John Doe Summonses".

15.     As more fully alleged below, the Hohman Plaintiffs only became aware of the improper issuance of any "John Doe Summonses" through inadvertence and/or court action initiated by the Hohman Plaintiffs in the context of a tax audit conducted by the IRS through Ms. Chung and Mr. Eadie.  As more fully alleged below, Defendants have never disclosed to the Miller Plaintiffs the improper issuance of a "John Doe Summons", for their financial and related records; or Defendants' improper handling, review, and use the financial and related records obtained through an improperly issued "John Doe Summons".

16.     As more fully alleged below, the Miller Plaintiffs only became aware of the improper issuance of a "John Doe Summons" through inadvertence and court action initiated by the Hohman Plaintiffs.

6

17.   As more fully alleged and described below, upon information and belief, Defendants, as part of a continuous and/or repeated system, pattern, and practice, have improperly issued and otherwise used "John Doe Summonses" on numerous occasions to secretly obtain financial and (and other) records (and thus, avoid the clear and fundamental notice and due process requirements otherwise attendant to "standard" Summonses) from Plaintiffs without obtaining prior court approval to do so (or otherwise satisfying the requirements necessary for the issuance and/or use of "John Doe Summonses").

18.   As more fully alleged below, upon information and belief, Defendants, as part of a continuous and/or repeated system, pattern, and practice, have unlawfully issued and otherwise used "John Doe Summonses" for, among other things, improper collateral purposes attendant to tax audits and investigations.

### IV.   RELEVANT LAW AND DISCUSSION CONCERNING "JOHN DOE SUMMONSES"

19.   As discussed below, in the context of tax audits and other government proceedings, generally, Defendants have the statutory authority to obtain and discover information from third party sources.  That statutory authority, however, generally requires specific notice to the subject(s) of any attempt to discover and obtain information from third party sources.  As discussed below, a "John Doe Summons" provides Defendants with limited and controlled means to secretly

7

discover and obtain information from third party sources without providing notice to the subject(s).  Accordingly, without an advance (or any) notice requirement, "John Doe Summonses" provide Defendants with a powerful investigative tool. As discussed below, specific to the IRS (and presumably other agencies of the United States), in addition to statute, there are regulations that govern the issuance and use of "John Doe Summonses".

20.     Properly issued, a "John Doe Summons" (under 26 U.S.C. § 7609(f)) does not require notification of the person(s) whose information is being sought or whose tax liability is being investigated.  *See* 26 U.S.C. § 7609(c)(3).  Otherwise, and unless another specific exception applies (under 26 U.S.C. § 7609(c)(2)), a summons issued to a third person for production of records requires that notice

> be given to any person [identified in the summons] within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

26 U.S.C. § 7609(a)(1).

21.     As provided in IRS Manual Section 25.5.7.4.2 (2),

> [t]he [IRS] should no longer be in the information-gathering or research stage of a project when it decides to seek court authorization to serve a John Doe summons. The project research should be sufficiently developed to enable the [IRS] to identify a specific tax compliance

8

problem.  The [IRS] should be prepared to investigate the tax liabilities of specific taxpayers based on the information received from the John Doe summons.  A John Doe summons cannot be used to conduct a 'fishing expedition.'"

(*Available at* https://www.irs.gov/irm/part25/irm_25-005-007.html#d0e119).

Further, IRS Manual Section 25.5.7.5.3 (1) and (2) provide in pertinent part:

> a.    The information to be obtained, including the identities of the John Does, is not readily available from other sources when the information cannot be obtained from the [IRS'] own records or public sources such as telephone directories, professional directories, or reporting services, and the information cannot be obtained voluntarily from entities such as state agencies and industry or professional organizations.  The fact that it may be more difficult administratively for the [IRS] to conduct the investigation by relying on its own records or on public sources may not satisfy the statutory requirement.  The [IRS] must show that retrieving the data from other sources will be impractical.  This may be shown by specifying the additional staff hours or procedures which will be necessary, and the significant impact on the [IRS'] normal operations if the information cannot be obtained by the summons.

> b.    Where some, but not all, of the information is readily available from public sources, the [IRS] must establish that the public sources are not complete or not comprehensive, and that the summoned data is necessary to ensure a thorough investigation of all taxpayers in the group under investigation.  (*See id*.)

22.    In order to issue a "John Doe Summons", thereby eliminating the fundamental notice requirements of 26 U.S.C. § 7609(a)(1), the IRS must make a showing of necessity and obtain approval from a federal court as provided under

9

26 U.S.C. § 7609(f).

23.     Congress enacted 28 U.S.C. §7609 (f) in response to the United States Supreme Court's decision in *United States v. Bisceglia*, 420 U.S. 141 (1975), in which the IRS issued a summons to a bank for the purpose of identifying an unnamed individual who had deposited a large amount of money in severely deteriorated bills.  The bills appeared to have been stored for a long period of time under abnormal conditions, and the IRS suspected that they had been hidden to avoid taxes.  The question decided in *Bisceglia* was "whether the Internal Revenue Service has statutory authority to issue a 'John Doe' summons to a bank or other depository to discover the identity of a person who has had bank transactions suggesting the possibility of liability for unpaid taxes".

24.     In *Bisceglia*, the majority recognized the danger that the IRS might use its summons power to "conduct 'fishing expeditions' into the private affairs of bank depositors," *id.*, at 150-151, but concluded that the IRS had statutory authority to issue the John Doe summons and had not abused its authority in that case.

25.     Justice Stewart dissented from the *Bisceglia* majority, and vigorously argued that the Court's opinion supplied a dangerous precedent opening the door to abuse by the IRS by subjecting virtually every financial transaction having potential tax implications to unchecked disclosure:

10

Virtually all "persons" or "objects" in this country "may," of course, have federal tax problems. Every day the economy generates thousands of sales, loans, gifts, purchases, leases, deposits, mergers, wills, and the like which -- because of their size or complexity -- suggest the possibility of tax problems for somebody. Our economy is "tax relevant" in almost every detail. Accordingly, if a summons could issue for any material conceivably relevant to "taxation" -- that is, relevant to the general duties of the IRS -- the Service could use the summons power as a broad research device. The Service could use that power methodically to force disclosure of whole categories of transactions and closely monitor the operations of myriad segments of the economy on the theory that the information thereby accumulated might facilitate the assessment and collection of some kind of a federal tax from somebody. And the Court's opinion today seems to authorize exactly that.

\* \* \*

The Court's opinion thus approves a breathtaking expansion of the summons power: There are obviously thousands of transactions occurring daily throughout the country which, on their face, suggest the possibility of tax complications for the unknown parties involved. These transactions will now be subject to forced disclosure at the whim of any IRS agent, so long only as he is acting in "good faith."

*Bisceglia*, 420 U.S. at 154,158 (internal citations omitted).

26.   "Section 7609[(f)] . . . was clearly a response to [*Bisceglia*]. Both the Senate and the House Reports accompanying the bill that became § 7609 focused exclusively on the problem of 'third-party summonses' -- that is, summonses served on a party that, like . . . the bank in *Bisceglia*, is not the taxpayer under

11

investigation." *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 314 (U.S. 1985) (citing S. Rep. No. 94-938, p. 368 (1976); H. R. Rep. No. 94-658, p. 306 (1975)).

27.     The House and Senate Reports "asserted that the standards enunciated in . . . *Bisceglia* might "unreasonably infringe on the civil rights of taxpayers, including the right to privacy." *Id.* at 316 (citing S. Rep. No. 94-938, at 368; H. R. Rep. No. 94-658, at 307).

28.     Therefore, in the case of a "John Doe Summons", where advance notice to the taxpayer is purportedly not possible, as a substitute for the notice procedures of §§ 7609(a) and (b), Congress enacted § 7609(f).  That provision provides that:

> Any summons . . . which does not identify the person with respect to whose liability the summons is issued ***may be served only after a court proceeding in which the Secretary establishes that*** --
>
> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
>
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
>
> (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources

12

(emphasis added).

29.     "Section 7609(f) was a response to concerns that the Supreme Court's decision in *Bisceglia* did not provide sufficient restraints, in the John Doe context, on the IRS' exercise of its summons power."   *See In re Tax Liabilities of John Does*, 671 F.2d 977, 979 (6th Cir. 1982)).

30.     "In effect, in the John Doe context, the court takes the place of the affected taxpayer under [§ 7609] and exerts a restraining influence on the IRS . . . [w]hat § 7609(f) does is to provide some guarantee that the information that the IRS seeks through a summons is relevant to a legitimate investigation, albeit that of an unknown taxpayer."   *Id.* at 321(internal citations omitted).

31.     To be clear, under the statute, a "John Doe Summons" may be served only after a court proceeding in which the United States establishes the enumerated elements under § 7069(f).   *United States v. Ritchie*, 15 F.3d 592, 599 (6th Cir. 1994).

## V.     COMMON AND KNOWN FACTS

32.     On October 8, 2015, Defendants issued Information Document Requests (the "Document Requests") to the Hohman Plaintiffs seeking the production of certain information.  The Hohman Plaintiffs received the Information Documents Requests on October 12, 2015.  Defendants did not provide the Hohman Plaintiffs with any other information concerning the basis of the

13

Document Requests.

33.     Although not descriptively explicit as to their basis and scope, as required to be under IRS regulations, the Documents Requests appeared to relate to, and commence, a tax audit of the Hohman Plaintiffs for the 2012 tax year only. In any event, prior to their receipt of the Document Requests, the Hohman Plaintiffs did not have any notice or indication that the IRS had commenced any review or audit related to their tax filings for the 2012 tax year, or otherwise.

34.     On October 26, 2015, Chase Bank provided the Hohman Plaintiffs with a non-descript "form" indicating that on September 25, 2015 (*nearly two weeks prior to the issuance of the Document Requests*), Defendants served Chase Bank with a "summons" seeking certain bank records apparently relating to the Hohman Plaintiffs, and concerning an almost eight (8) year period extending from January 1, 2008 through August 31, 2015 (hereafter the "First John Doe Summons").

35.     Upon information and belief, at the time of the First John Doe Summons, Defendants had been targeting certain of Jhohman's industry competitors and/or personal associates of Ms. Hohman, for examination and audit, through which Defendants could have readily ascertained the identity of the Hohman Plaintiffs.

36.     Further, the First Joe Doe Summons Defendants served on Chase

14

Bank requested the production of documents by October 26, 2015.  However, *by October 8, 2015, Defendants had already issued Document Requests to the Hohman Plaintiffs*.   As such, Defendants had already identified the Hohman Plaintiffs as the subjects of an examination; therefore obviating any purported or claimed need to issue and use a secret "John Doe Summons".

37.     Furthermore, as became later known to the Hohman Plaintiffs and the Miller Plaintiffs, Defendants utterly failed to comply with the requirements of 28 U.S.C. § 7609(f) for the issuance of a "John Doe Summons".

38.     A copy of the First John Doe Summons provided to the Hohman Plaintiffs by Chase Bank appeared to be redacted as to the subject accounts and sought an extensive production of banking records for the identified account, specifically:

> Any and all signature cards for account #[redacted] and #[redacted]
>
> Monthly checking account statements, trust account statements, copies of all items deposited (front and back), credit memo, debit memo, and duplicate deposit slips; including but not limited for account #[redacted] and #[redacted] from January 1, 2008 through August 31, 2015.
>
> Any and all cancelled checks withdrawal tickets, any and all official checks purchased, and/or any other debits, electronic transfers, wire transfers detail records, including but not limited for for [*sic.*] account #[redacted] and [redacted] from January 1, 2008 through August 31, 2015.

15

39.     The First John Doe Summons was issued in "the matter of John Doe," and although specific account numbers were identified on the First John Doe Summons, the identity of the holders of those accounts was not provided on the First John Doe Summons.

40.     Because the First John Doe Summons did not identify the person(s) with respect to whose liability it was issued, the First John Summons was the type of summons that is subject to the explicit requirements of 26 U.S.C. § 7609(f).

41.     In issuing the First John Doe Summons (as the Hohman Plaintiffs and Miller Plaintiffs learned later when they finally discovered they were the subjects of the First John Doe Summons), Defendants failed to comply with the express requirements of 26 U.S.C. § 7609(f), including the failing to obtain the requisite prior court approval (thereby depriving the Hohman Plaintiffs and the Miller Plaintiffs of the carefully tailored protections of that provision).

42.     On October 28, 2015, the Hohman Plaintiffs' counsel sent a letter to Defendants, in the context of the pending tax audit, setting out various objections to the issuance and scope of the First John Doe Summons, including that:

      a.  it was improperly issued as a John Doe Summons;

      b.  it was issued prior to the formal initiation of any examination process;

      c.  it was issued without giving adequate notice;

      d.  Defendants failed to provide a list identifying all third parties

16

contacted in connection with the investigation;

e. the requests were improper, overreaching and sought information not relevant to the 2012 tax year; and

f. the information sought could have been otherwise produced by the Hohman Plaintiffs.

43. On November 18, 2015, after Defendants canceled a meeting with the Hohman Plaintiffs' counsel originally scheduled for November 12, 2015, the Hohman Plaintiffs' counsel met with Ms. Chung and Mr. Eadie to discuss the First John Doe Summons and the issues raised in the October 28, 2015 correspondence.

44. In response to the concerns raised in the October 28, 2015 correspondence, including the legality and scope of the First John Doe Summons, Ms. Chung and Mr. Eadie expressly assured the Hohman Plaintiffs' counsel that neither they, nor their office, had received any documentation from Chase Bank responsive to the First John Doe Summons.  They further expressly represented that since Chase Bank was demanding a large advance production fee in the approximate amount of $5,000, which they did not authorize or otherwise agree to pay, they did not anticipate a production would be forthcoming.

45. Ms. Chung and Mr. Eadie nonetheless expressly agreed to set aside the First John Doe Summons, as they had to tacitly concede it had been issued improperly and without the appropriate foundation, and, further, agreed to refrain from reviewing any documentation produced by Chase Bank (in the unlikely event

17

Chase belatedly responded to the First John Doe Summons) (albeit, conditionally, pending their review of the numerous documents the Hohman Plaintiffs agreed to make available to Defendants for inspection as part of the tax audit).

46.     The meeting and discussions concerning the First John Doe Summons were memorialized in a letter dated November 20, 2015 from the Hohman Plaintiffs' counsel to Ms. Chung and Mr. Eadie.

47.     Following the parties' meeting, the Hohman Plaintiffs learned from Chase Bank that Chase Bank had, in fact, produced documents requested by the First John Doe Summons to Defendants, on November 17, 2015 – *one day before the meeting at which Defendants expressly represented that they did not expect documents from Chase Bank to be forthcoming*.

48.     Accordingly, the Hohman Plaintiffs sent Defendants additional correspondence, dated November 20, 2015, noting additional concerns regarding the status of the First John Doe Summons, and requesting written confirmation (by no later than November 23, 2015) of their treatment of any documents produced in response.  Defendants did not provide any confirmation or assurance, timely or otherwise.

49.     Importantly, and unbelievably, subsequent to sending confirming correspondence on November 20, 2015, the Hohman Plaintiffs also learned that Defendants (specifically, upon information and belief, Ms. Chung), *contrary to*

18

*their express representations to the Hohman Plaintiffs' counsel in an in-person meeting*, and as confirmed in the Hohman Plaintiffs' counsel's uncontested correspondence, had actually conferred with Chase Bank *prior to the parties' meeting* and agreed to (a) narrow the scope of the document request thereby reducing the fees required for Chase Bank to produce the records (obviating Defendants' purported reason for not pursuing production of the records), and (b) extend Chase Bank's appearance/return date for production of the records to November 17, 2015. This information provided the Hohman Plaintiffs with further confirmation that Defendants had not conducted themselves in good faith, and had no credible intention of addressing the Hohman Plaintiffs' objections, as they said they would.

50.     As such, upon information and belief, when Defendants (specifically including Ms. Chung and Mr. Eadie) represented during the meeting with the Hohman Plaintiffs' counsel that they did not intend to pursue the document production from Chase Bank, they did in fact fully intend to obtain documents from Chase Bank and knew they would be receiving documents from Chase Bank pursuant to the improperly issued First John Doe Summons and their agreement with Chase Bank to modify the scope and production date of the First John Doe Summons.

51.     On November 25, 2015, upon learning that Defendants, contrary to

their express representations, had in fact received documents pursuant to the improperly issued First John Doe Summons, the Hohman Plaintiffs raced to file a Petition to immediately quash the First John Doe Summons in the United States District Court of the Eastern District of Michigan, Case No. 2:15-mc-51669-VAR-APP (the "Petition to Quash Proceeding").

52.    In the course of the Petition to Quash Proceeding, and in a purported attempt to address the Hohman Plaintiffs' justified inquiries concerning the propriety of the First John Doe Summons and documents produced in response thereto, Ms. Chung and Mr. Eadie provided sworn Declarations concerning the First John Doe Summons.

53.    The Declarations were revealing. Through their Declarations, Defendants admitted in no uncertain terms that the First John Doe Summons was improperly issued in violation of federal law, stating "***the Summons is the type of summons that is subject to the requirements of 26 U.SC. § 7609(f) . . . The requirements of 26 U.S.C. § 7609(f) were not complied with in this case.***"

54.    The Declarations also revealed - for the first time - that Defendants had in fact issued a previously undisclosed *second* "John Doe Summons: concerning the Hohman Plaintiffs to Chase Bank on September 30, 2015 (the "Second John Doe Summons")(the First John Doe Summons, with the Second John Doe Summons, collectively, the "Improper John Doe Summonses").

20

55.    Attached to the Declarations were copies of a partially-redacted First John Doe Summons, and un-redacted Second John Doe Summons.

56.    Review of the partially redacted First John Doe Summons revealed that it sought records for two accounts: one account in the name of Jhohman, and, according to the Declaration of Ms. Chung, a second account that did not belong to the Hohman Plaintiffs, and whose number thus remained redacted.  As alleged below, the Miller Plaintiffs later learned that the "second account" belonged to them.

57.    Review of the unredacted and previously undisclosed Second John Doe Summons revealed that it sought records for an account in the name of Ms. Hohman.

58.    The Declarations also revealed that, while Ms. Chung and Mr. Eadie represented to the Hohman Plaintiffs' counsel on November 18, 2015 that they had neither received, nor expected to receive the documents summonsed from Chase Bank (purportedly due to the costs of production demanded by Chase Bank), ***Defendants had in fact received documents from Chase Bank the morning of that very same day***.

59.    As such, the foregoing makes clear that not only were the Improper John Doe Summonses admittedly issued in violation of clear federal law, but also surreptitiously and in bad faith disregard for the statutory and constitutional rights

21

of the Hohman Plaintiffs and the Miller Plaintiffs.

60.     Despite Defendants' ongoing failure to identify the account holder of the "second account" included on the First John Doe Summons, subsequent investigation has revealed the account belongs to the Miller Plaintiffs.

61.     The Declarations are noticeably silent as to the status of any documents concerning the account belonging to the Miller Plaintiffs produced by Chase Bank pursuant to the First John Doe Summons.

62.     Defendants never disclosed to the Miller Plaintiffs the issuance of the First John Doe Summons, and have not indicated the status of any documents received pursuant thereto, and their current whereabouts are unknown. Nevertheless, upon information and belief, Defendants did in fact obtain, and receive the bank records for the Miller Plaintiffs obtained pursuant to the improperly issued First John Doe Summons.

63.     Upon information and belief, the conduct of Defendants in this case is illustrative of a widespread pattern and practice effecting a broad scope of United States' citizens and depriving those persons of their constitutional and statutory rights, namely the improper use and issuance of "John Doe Summonses" to secretly obtain bank and financial (and other) records.  Discovery is required and warranted in order to determine the scope of Defendants' conduct, and the extent of the subject class of aggrieved parties.

## VI.   CAUSES OF ACTION

64.   On account of Defendants' wrongful conduct, Plaintiffs assert the following causes of action, on behalf of themselves and the class they seek to represent, seeking recovery for and from Defendants' willful and malicious statutory and constitutional violations, namely:  (1) damages for violation of the Right to Financial Privacy Act; (2) damages for violation of the Privacy Act; (3) damages against the Individual Defendants under *Bivens*; (4) injunctive and declaratory relief pursuant to the Declaratory Judgment Act, (5) damages for violation of the Fourth and Fifth Amendments of the United States Constitution; and (6) damages under 26 U.S.C. § 7431 for violation of 26 U.S.C. § 6103 (for the improper inspection and disclosure of Return information).

### COUNT ONE: THE RIGHT TO FINANCIAL PRIVACY ACT

65.   Plaintiffs incorporate the allegations in the above paragraphs as though fully set forth herein.

66.   The Right to Financial Privacy Act grants all United States' citizens certain protections regarding financial information.

1.   Defendants knowingly and willfully caused "John Doe Summonses" to be issued for bank and financial records of Plaintiffs.

67.   The "John Doe Summonses" were issued in violation of the Right to

23

Financial Privacy Act, including 12 U.S.C. § 3405, which provides that an administrative subpoena or summons otherwise authorized by law for production of financial records may only be issued if *all* of the following criteria are met:

> (1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;
>
> (2) a copy of the subpoena or summons has been served upon the customer or mailed to his last known address on or before the date on which the subpoena or summons was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry:
>
> "Records or information concerning your transactions held by the financial institution named in the attached subpoena or summons are being sought by this (agency or department) in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C. 3401 et seq.] for the following purpose: If you desire that such records or information not be made available, you must:
>
>> "1. Fill out the accompanying motion paper and sworn statement or write one of your own, stating that you are the customer whose records are being requested by the Government and either giving the reasons you believe that the records are not relevant to the legitimate law enforcement inquiry stated in this notice or any other legal basis for objecting to the release of the records.
>>
>> "2. File the motion and statement by mailing or delivering them to the clerk of any one of the following United States district courts:
>>
>> "3. Serve the Government authority requesting the records by mailing or delivering a copy of your motion and statement to

"4. Be prepared to come to court and present your position in further detail.

"5. You do not need to have a lawyer, although you may wish to employ one to represent you and protect your rights.

If you do not follow the above procedures, upon the expiration of ten days from the date of service or fourteen days from the date of mailing of this notice, the records or information requested therein will be made available. These records may be transferred to other Government authorities for legitimate law enforcement inquiries, in which event you will be notified after the transfer."; **and**

**(3)** ten days have expired from the date of service of the notice or fourteen days have expired from the date of mailing the notice to the customer and within such time period the customer has not filed a sworn statement and motion to quash in an appropriate court, or the customer challenge provisions of section 3410 of this title have been complied with.

12 U.S.C. § 3405 (emphasis added).

68.     None of the requirements of 12 U.S.C. § 3405 were complied with in issuing the Improper John Doe Summonses and obtaining Plaintiffs' protected financial information.

69.     The purpose of 12 U.S.C. § 3405, in part, is to provide an opportunity for citizens to challenge the relevancy of the requested financial records to any law enforcement inquiry.

70.     Defendants' failure to comply with the express requirements of 12 U.S.C. § 3405 undermined the purpose and protection provided by the Right to

25

Financial Privacy Act.

71.     The United States has waived sovereign immunity and has provided

taxpayers a cause of action for damages for violations of the Financial Privacy Act.

72.     12 U.S.C. § 3417(a) provides civil remedies for those whose rights are

violated, namely "[a]ny agency or department of the United States or financial

institution obtaining or disclosing financial records or information contained

therein in violation of this chapter is liable to the customer to whom such records

relate in an amount equal to the sum of—:

> **(1)** $100 without regard to the volume of records
> involved;
>
> **(2)** any actual damages sustained by the customer as a
> result of the disclosure;
>
> **(3)** such punitive damages as the court may allow, where
> the violation is found to have been willful or intentional;
> and
>
> **(4)** in the case of any successful action to enforce liability
> under this section, the costs of the action together with
> reasonable attorney's fees as determined by the court.

73.     The Right to Financial Privacy Act also provides for disciplinary

action for willful or intentional violation by the involved agents or employees.  *See*

12 U.S.C. § 3417.

74.     The Improper John Doe Summonses and financial information

revealed pursuant thereto are not subject to an exception under 12 U.S.C. § 3413.

In particular, 12 U.S.C. § 3413(c) does not apply because the summonses were

26

admittedly required to, but failed to comply with, the express statutory requirements for issuance of "John Doe Summonses" under Title 26, and therefore the financial information was not "disclosed in accordance with procedures authorized by Title 26."

## COUNT TWO: THE PRIVACY ACT

75.     Plaintiffs incorporate the allegations in the above paragraphs as though fully set forth herein.

76.     The Privacy Act grants all United States' citizens certain protections regarding private information. Defendants violated several sections of the Privacy Act, including not limited to:

a.     Section 552a(e)(1), which requires that the agency "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by Executive Order of the President";

b.     Section 552a(e)(2), which requires that the agency "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs";

77.     For purposes of the Privacy Act, the term "maintain" includes to maintain, collect, use, or disseminate.

27

78.     Defendants intentionally and willfully violated the Privacy Act by maintaining, collecting, using, and/or disseminating Plaintiffs' private information as provided above in direct violation of federal statute, thereby rendering the information neither relevant nor necessary to accomplish a lawful purpose of an agency.

79.     Defendants intentionally and willfully violated the Privacy Act by collecting Plaintiffs' private information from a third party when, upon information and belief, that information could practicably have been obtained directly from Plaintiffs.

80.     The United States has waived sovereign immunity and has provided taxpayers a cause of action for damages for violations of the Privacy Act.

81.     The Privacy Act provides civil remedies for individuals who have been injured by activities such as those alleged herein. Plaintiffs assert causes of action under subsection (d) of the Privacy Act because the IRS failed to comply with several provisions of the Privacy Act in such a way as to have an adverse effect on Plaintiffs.

## COUNT THREE: FEDERAL STATUTE AND UNITED STATES CONSTITUTION

82.     Plaintiffs incorporate the allegations in the above paragraphs as though fully set forth herein.

### (a) *Bivens* Claim

28

83.     The United States Supreme Court ruled in *Bivens* that federal officers are subject to personal liability for any violation of constitutional rights of which a reasonable officer would be aware.   *Bivens* is available where there is a constitutional violation and the victim has no other remedy. Other than the damages for the privacy intrusions alleged herein, Plaintiffs have no remedy for a governmental agency's surreptitious intrusion into private financial information in the possession of a third person, even where, as here, the intrusion clearly violated established law.   This is a constitutional tort and a clear violation of Plaintiffs' Fourth and Fifth Amendment rights.

84.     The constitutional violations perpetrated by Defendants include but are not limited to:

a.     conduct of an unreasonable and unlawful search and seizure into the private affairs of Plaintiffs;

b.     willful and intentional disregard of applicable statutory procedures in issuing the "John Doe Summonses", denying Plaintiffs without rational basis, the protections of clearly delineated federal law otherwise rightfully afforded to similarly situated United States' citizens and tax payers;

c.     deprivation of Plaintiffs' property rights without statutorily and constitutionally mandated due process of law; and

d.     denial of access to judicial process by surreptitiously obtaining

29

Plaintiffs' financial information without notice and in violation of federal law.

### (b)  Claim Against the IRS and the United States

85.    Additionally, for the reasons discussed above, the IRS and the United States committed the same statutory and constitutional violations as the Individual Defendants. This conduct has caused irreparable harm to Plaintiffs, and there is no other adequate remedy at law. This Court may grant declaratory and injunctive relief against the IRS and the United States, pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that Defendants' conduct is unlawful and enjoining them from engaging in issuance of unlawful summonses, "John Doe" and otherwise.

### COUNT FOUR: RETURN INFORMATION

86.    Plaintiffs incorporate the allegations in the above paragraphs as though fully set forth herein.

87.    "Return information shall be confidential," and with limited exceptions, cannot be disclosed or inspected by employees of the federal government. 26 U.S.C. § 6103.

88.    Return information includes, among other things:

> (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected

30

by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b) which is not open to public inspection under section 6110.

26 U.S.C. § 6103(b)(2)

89.   All information furnished to Defendants in response to Defendants' Improper John Doe Summonses is return information pursuant to Section 6103.

90.   Upon information and belief, Defendants inspected Plaintiffs' information and shared it amongst themselves even though they knew the information was surreptitiously and unlawfully obtained and therefore objectively unnecessary, and subjectively not undertaken, "for tax administration purposes" under 26 U.S.C. § 6013(h).

91.   The United States has waived sovereign immunity and has provided taxpayers a cause of action for damages for knowing or negligent unauthorized inspection of tax return information in violation of section 6103.

92.   Each inspection and disclosure was made at least with gross negligence, or was made willfully.

93.   Accordingly, each inspection or disclosure violates section 6103 and

31

entitles those Plaintiffs whose information was provided in response to Improper John Doe Summonses to damages under section 7431 of the Internal Revenue Code.

## COUNT FIVE: CERTIFICATION OF CLASS

94.     Plaintiffs incorporate the allegations in the above paragraphs as though fully set forth herein.

95.     Plaintiffs ask this Court to certify a class action of all persons impacted by Defendants' improper issuance of summonses, "John Doe" and otherwise, and maintenance, collection, inspection, and/or other use of information produced by third parties pursuant thereto.

96.     The class definition would include all persons impacted by Defendants' improper issuance of summonses, "John Doe" and otherwise, including the maintenance, collection, inspection, and/or other use of information produced by third parties pursuant thereto.

97.     This case meets all of the prerequisites of Federal Rule of Civil Procedure 23(a).

98.     Upon information and belief, this class is so numerous that joinder of all members is impracticable.  The exact number of all class members can only be determined through discovery.

99.     There are questions of law or fact common to the class.  All of the

32

members of the class suffered the same sorts of statutory and constitutional violations articulated in Counts One though Four above.  The same statutory and constitutional standards apply to each member of the class and common questions of law apply.  Members of the class were subjected to improper collection, maintenance, inspection, and/or other use of their private information that violates the United States Constitution and federal statutes as articulated in the foregoing counts.

100.   The common questions of law and fact include:

a.   Whether the United States engaged in the collection, maintenance, inspection, and/or other use of private information of the class members by way of improperly issued summonses, "John Doe" and otherwise.

b.   Did Defendants engage in improper information gathering by way of improperly issued summonses, "John Doe" and otherwise, willfully and intentionally as a matter of pattern and practice?  If so, how did this pattern and practice originate?  Who ordered it and who was involved?

c.   Did Defendants' conduct violate the Financial Right to Privacy Act?

d.   Did Defendants' conduct violate the Privacy Act?

e.   Did Defendants' conduct violate 26 U.S.C. § 6103, entitling class members to a cause of action under 26 U.S.C. § 7431?

33

f.     Were the statutory and constitutional rights of class members violated by Defendants?

101.   The claims in this case are typical because Plaintiffs and all members of the class suffered privacy, statutory, and constitutional violations due to Defendants' improper issuance of summonses, "John Doe" and otherwise.

102.   Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs' interests are the same as other members of the class in holding Defendants responsible for their illegal activity, ensuring that it never happens again, and being fairly compensated for the results of this illegal activity.

103.   The provisions of Rule 23(b)(2) apply because Defendants have acted on grounds that apply generally to the class such that final injunctive relief would be appropriate for the class as a whole.   The class will seek declaratory and injunctive relief from this Court, including but not limited to:

a.     A declaration that Defendants have engaged in improper issuance of summonses, "John Doe" and otherwise, and Defendants shall refrain from the continuation of such practices;

b.     A declaration that Defendants must destroy all records obtained or maintained illegally and in violation of the Financial Right to Privacy Act, the Privacy Act, other statutes referenced herein, or any provision of the United States Constitution relating to class members.

34

      c.     A declaration that the United States establish clear training and guidelines for all employees to prevent this sort of invasion of privacy from occurring again in the future.

      d.     A declaration that any and all United States' employees knowingly and intentionally engaging in such wrongful conduct shall be disciplined appropriately, including but not limited removal from audits and/or other investigations through which the information was illegally obtained, and termination where appropriate.

104.  The provisions of Rule 23(b)(3) are met in that questions of law or fact common to class members predominate over individual questions and class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The common questions of law and fact are clear as described above and incorporated here by reference.  Individual questions are minimal.  For example, some persons may have had different type of information seized, and/or information used in a different manner, yet the process of obtaining that information by way of improperly issued summonses, "John Doe" and otherwise, remains the same and the resultant violations are thus indistinguishable.

105.  A single action adjudicating the legal rights of the class members would be more efficient than individual litigation. As noted, a large class membership is anticipated, and thus individual actions will greatly inconvenience

35

the judicial system, and require needless duplication.  A single unified discovery process would greatly expedite this litigation and prevent needless, repetitive document productions and depositions from Defendants.  Likewise, a single trial court ruling upon the constitutional and statutory claims would greatly improve judicial efficiency.  All of these factors illustrate the benefits of concentrated litigation in a single forum.

106.   Upon information and belief, no other class action has been filed concerning the facts and legal issues alleged herein.  Thus, no other litigants' activities should be impaired.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

- Enter an Order certifying this case as a class action and appointing their attorneys as class counsel;

- Award Plaintiffs actual damages for violation of the Financial Right to Privacy Act, but in any event no less than the minimum statutory damages for each violation, plus punitive damages, the cost of litigation, and reasonable attorney's fees;

- Award Plaintiffs actual damages for violation of the Privacy Act, but in any event no less than the minimum statutory damages for each violation, plus punitive damages, the cost of litigation, and reasonable attorney's fees;

- Award Plaintiffs damages for violation of their constitutional rights, including actual damages, punitive damages, litigation costs, and reasonable attorney's fees;

36

- Award Plaintiffs declaratory and injunctive relief as set forth above;

- Award Plaintiffs damages pursuant to 26 U.S.C. § 7431(c) for each inspection or disclosure of their return information, including at a minimum statutory damages for each violation, or actual and punitive damages, plus costs and reasonable attorney's fees;

- Award Plaintiffs specific and/or injunctive relief as outlined above, including without limitation, appropriate discipline, including and up to termination, for any employee of the United States found to have violated any of the statutes or other laws discussed or enumerated herein; and

- Award Plaintiffs any and all other relief in their favor the Court deems just and appropriate under the circumstances.

**JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

CLARK HILL PLC

By:   s/ Stuart M. Schwartz
     Stuart M. Schwartz (P62752)
     Jeffrey M. Bloom (P72343)
     500 Woodward Avenue, Ste 3500
     Detroit, MI 48226
     Tele: (313) 965-8300
     sschwartz@clarkhill.com
     Counsel for Plaintiffs


     Brent J. Leder (P70866)
     5119 Highland Rd # 264
     Waterford, MI 48327-1915
     Tele: (248) 763-1423
Dated: April 20, 2016     bleder@comcast.net
     Co-counsel for Plaintiffs

37